**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KAREN LEAGUE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:13-cv-177** |
| | ) | |
| **REV J. OLDS, JOHN DOE, TATE ELLIET, and** | ) | **Judge Sharp** |
| **ROLAND MARTIR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Karen League has filed a complaint in this Court purporting to assert claims under various federal statutes, as well as claims based on state law. Because the plaintiff proceeds *in forma pauperis*, the Court must conduct an initial review of the complaint, prior to service on any defendant, and must dismiss it *sua sponte* if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth herein, the Court finds that the complaint fails to state a claim under federal claim for which relief may be granted, and that the Court therefore lacks jurisdiction over the plaintiff's non-diverse state-law claims.

**I.       FACTUAL ALLEGATIONS**

The plaintiff alleges that on December 21, 2012, she and her daughter went to Trinity/Thrifty Automotive Car Sales ("Trinity") to purchase a vehicle. As they arrived on the lot, the women were approached by defendant Roland Martir, car salesman. The plaintiff had discussions with Martir about a car she was interested in purchasing, a 2009 Malibu, and finally informed Martir that she wanted to purchase that particular vehicle. The plaintiff realized she needed to return to her house to get her driver's license and most recent pay stub in order to purchase the car. While she did that, Martir began to process the sale of the 2009 Malibu to the plaintiff.

Meanwhile, the plaintiff's daughter also found a vehicle she was interested in purchasing, a Dodge Caravan. When the plaintiff arrived back at Trinity, her daughter asked if she could borrow $100 to hold the vehicle until the next day, Saturday, December 22, 2012. The plaintiff expressed her surprise

that it would cost $100 to hold the Caravan for one day, but Martir explained that there was another customer on the lot who was interested in purchasing the same vehicle. The plaintiff asked if Martir meant that her daughter had to put $100 down for a deposit on the Caravan, and Martir replied yes.

The plaintiff told Martir that she did not have $100 cash on her, and Martir told her that Trinity would accept a debit or credit card. The plaintiff agreed to let Martir "swipe" her debit card in the amount of $100 to hold the Dodge Caravan for her daughter. The plaintiff told her daughter to follow Martir back to Sales Manager Tate Elliet's office to make sure that Martir and Elliet only took $100 using the plaintiff's debit card. When the plaintiff's daughter and Martir returned to Martir's desk, the plaintiff's daughter informed the plaintiff that Martir had debited, not $100, but $1500 from the plaintiff's account using her debit card. The plaintiff asked Martir to charge the $1500 back to her card. Martir left his office, indicating he would try. Twenty minutes later, Martir returned saying that he could not put the $1500 back in the plaintiff's account because "the bank" or "whoever financed the vehicle" now had the money. The plaintiff called her bank and explained what happened. Her bank explained to her that the money had gone to Trinity, and that Trinity could reverse the charge and put the money back in her account. Martir went back again to confer with Elliet, and returned to his desk another fifteen or twenty minutes later, this time telling the plaintiff that she would have to come back on December 28, 2012 to have the charges reversed and the money placed back in her account. Martir assured her the money would be put back in her account on December 28.

The plaintiff was unable to persuade Martir to put the money back in her account that day, December 21. She returned to Trinity on December 28, 2012, however, and was again told that Trinity could not give her back the $1500. The Court presumes that Trinity, to date, has not returned the plaintiff's money.

The plaintiff states that she believes the defendants were taking advantage of her because she is a single black female.

The plaintiff does not state that she or her daughter actually purchased a vehicle from Trinity or entered into any consumer credit transaction with Trinity.

In addition to naming Roland Martir and Tate Elliet as defendants, the plaintiff also seeks to sue Rev J. Olds, as the owner of Trinity, and John Doe as the insurance company that insures Trinity, on the

basis that defendants Martir and Elliet were at all times acting under the direction of Olds and John Doe. The plaintiff asserts that the defendants were "acting under color of law and pursuant to official policy or custom." (ECF No. 1, at 9.)

Based on these allegations, the plaintiff asserts that the defendants' acts violated the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961; the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601; and Federal Reserve Regulation Z, 12 C.F.R. § 226, which implements TILA. The plaintiff also asserts that the defendants' acts violated her rights under the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983. In addition, the plaintiff claims that the defendants violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, the Tennessee Uniform Commercial Code, and Tennessee common law. The plaintiff seeks statutory, compensatory and punitive damages, plus costs and attorneys' fees.

## II. STANDARD OF REVIEW

If an action is filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The screening provisions of § 1915(e)(2) apply to both prisoner and non-prisoner actions. *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The Court is required to construe the plaintiff's *pro se* complaint liberally and to hold the complaint to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). To state a colorable claim, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. ANALYSIS AND DISCUSSION

Federal courts are courts of limited jurisdiction. The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895). The facts showing the existence of jurisdiction must be affirmatively alleged in the complaint. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1).

The basic statutory grants of subject-matter jurisdiction for federal courts are contained in 28 U.S.C. § 1331, which provides for "federal question" jurisdiction, and 28 U .S.C. § 1332, which provides for "diversity of citizenship" jurisdiction. Diversity jurisdiction requires that the opposing parties be citizens of different states. 28 U.S.C. § 1332(a)(1). It is clear from the addresses provided in the plaintiff's complaint for herself and each defendant that diversity jurisdiction does not exist in this case, because all parties are citizens of Tennessee.

Consequently, the complaint must on its face provide at least an arguable basis for federal-question jurisdiction in order to survive the court's screening under § 1915(e)(2). A plaintiff properly invokes federal-question jurisdiction when she pleads a colorable claim "arising under" the federal Constitution or laws. 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)). The Court must therefore consider whether the allegations in the complaint are sufficient to state a colorable claim under 42 U.S.C. § 1983, RICO, or TILA.

**A.      42 U.S.C. § 1983**

Here, the *pro se* complaint references the Fourteenth Amendment to the United States Constitution and also states that the defendants were acting "under color of law," and indicates that the plaintiff seeks to bring a cause of action under 42 U.S.C. § 1983. That statute imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. "Section 1983 serves as a vehicle to obtain damages caused by persons acting under color of state law whose conduct violates the U.S. Constitution or federal laws." *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009), cert. denied, --- U.S. ----, 130 S. Ct. 2063 (2010).

To prevail on a claim under § 1983, the plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). A private actor may only be considered a person acting under color of state law (a state actor) if "(1) the deprivation

complained of was 'caused by the exercise of some right or privilege created by the state' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'"  *Id.* (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590–91 (6th Cir. 2003), and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

The defendants in this action are all private individuals or entities, not state employees or state agencies.  The allegations in the complaint do not suggest that any of the defendants was a person acting under color of state law, or that their conduct was in any way chargeable to the state.  Because the complaint does not show that these private individuals or entities functioned as state actors, the complaint fails to state a claim under 42 U.S.C. § 1983.  The claim under § 1983 therefore must be dismissed for failure to state a claim upon which relief may be granted.

**B.      The Racketeering Influenced and Corrupt Organizations Act**

Although RICO was passed as part of a larger initiative, the Organized Crime Control Act of 1970, which specifically targeted organized crime and mob activity, *see United States v. Turkette*, 452 U.S. 576, 589 n.11 (1981), the Supreme Court has recognized that RICO reaches racketeering activity committed by legitimate businesses and organizations as well.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498–99 (1985) ("RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime. . . [but RICO can also be] used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct.").  18 U.S.C. § 1964(c) creates a civil cause of action and treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  Section § 1962(c), which appears to form the basis for the plaintiff's claims, provides that:  "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."  To state a § 1962(c) RICO claim, then, a plaintiff must plead a person's "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima*, 473 U.S. at 496 (footnote omitted); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

"Conduct" refers to a defendant's conduct or participation in the alleged enterprise's affairs.  The words "conduct or participate" imply a degree of direction, and mean that the defendant must have "some

part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Section 1961(4) defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court defines an enterprise as a "group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583. "Racketeering activity" is defined in 18 U.S.C. § 1961(1) as any one of a numerous list of state and federal offenses that qualify as racketeering activity, including several forms of fraud.

Under 18 U.S.C. § 1961(5), a "pattern of racketeering activity" requires at least two racketeering acts. *See Turkette*, 452 U.S. at 583 (noting that a pattern of racketeering activity "is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise"); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994) (the "pattern" element requires a showing of at least two predicate acts of racketeering activity within ten years of each other (citing *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989)).

In the present case, even assuming the plaintiff has alleged conduct of an enterprise that might qualify as racketeering activity, she clearly has not alleged a *pattern* of any such activity. The plaintiff's allegations concern *one* predicate event that took place on one particular day in December 2012. She claims the defendants refused to correct or reverse a single fraudulent and unauthorized charge using her debit card, but such refusal, even though it might continue, does not constitute a pattern of behavior. She does not show that the defendants engaged in the same type of behavior with other potential customers of their business, or that they are continuing to engage in such conduct. The complaint therefore fails to state a claim under RICO. *Cf. Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir. 1995) (defining a "pattern" as "the sum of various factors including: the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); and the number of perpetrators (the less the better)"); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1298 (6th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990) (adopting a "multi-factor test" for determining whether a pattern exists in any given RICO case, and defining the test as including relevant factors such as the "number and variety

of predicate acts" and the length of time spanning the acts); *Thompson v. Paasche*, 950 F.2d 306, 310–11 (6th Cir. 1991) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement [of a pattern]: Congress was concerned in RICO with long-term criminal conduct.").

In sum, because the plaintiff has failed to allege the "pattern of racketeering activity" element of a § 1962(c) claim, she fails to state such a claim.[1]

### C.      The Federal Truth in Lending Act

TILA was enacted by Congress to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 864 (6th Cir. 2003) ("Congress enacted TILA in 1968 with the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers."). In order to be meaningful, "TILA achieves its remedial goals by a system of strict liability in favor of the consumers when mandated disclosures have not been made. . . . A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent." *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir. 1990). TILA is codified at 15 U.S.C. §§ 1601–1693 and its provisions are implemented by Title 12 of the Code of Federal Regulations Part 226 known as Regulation Z. Regulation Z states in pertinent part:

> (1) In general, this regulation applies to each individual or business that offers or extends credit when four conditions are met:
>
>> (i) The credit is offered or extended to consumers;
>>
>> (ii) The offering or extension of credit is done regularly;
>>
>> (iii) The credit is subject to a finance charge or is payable by a written agreement in more than four installments; and

---

[1] Insofar as the plaintiff may intend to assert a RICO conspiracy claim under 18 U.S.C. § 1962(d), that claim fails as well. To state a claim under § 1962(d), the plaintiff has to successfully allege all the elements of a RICO violation under § 1962(c), plus "the existence of an illicit agreement to violate the substantive RICO provision." *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983). Where, as here, the plaintiff fails to state a substantive RICO claim, she automatically cannot state a RICO conspiracy claim either. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990).

(iv) The credit is primarily for personal, family, or household purposes.

(2) If a credit card is involved, however, certain provisions apply even if the credit is not subject to a finance charge, or is not payable by a written agreement in more than four installments, or if the credit card is to be used for business purposes.

(3) In addition, certain requirements of § 226.5b apply to persons who are not creditors but who provide applications for home-equity plans to consumers.

(4) Furthermore, certain requirements of § 226.57 apply to institutions of higher education.

12 C.F.R. § 226.1(c).

TILA liability arises when a creditor fails to make the required disclosures "before consummation of the transaction," *id.* § 226.17(b), defined as "the time that a consumer becomes contractually obligated on a credit transaction," *id.* § 226.2(a)(13). "Consummation" occurs when a borrower signs loan documents and becomes obligated to pay, despite the fact that the loan may still be contingent on the lender's approval. *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1066 (11th Cir. 2004); *Copley v. Rona Enters.*, 423 F. Supp. 979, 982–83 (S.D. Ohio 1976)).

TILA, in short, governs *credit* transactions. The term "credit" is defined by statute as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). In the present complaint, the plaintiff does not allege that any credit transaction occurred, much less consummation of such a transaction. She also does not allege that she or her daughter signed a sales contract for the purchase of a vehicle that would be financed by the defendants. She does not allege that she borrowed money at all. Instead, her daughter allegedly was trying to make a down-payment or pay a deposit in order to retain the right to return the next day to purchase a particular vehicle. In addition, the plaintiff specifically alleges that the card she gave the defendants for the purpose of paying the deposit was a *debit* card, not a credit card, which means the money was taken directly from her account for the purpose of putting the deposit down. She apparently did not borrow the money for the deposit.

Because the plaintiff here apparently never incurred a debt or consummated a credit transaction with any of the defendants, her claims are not governed by TILA. The plaintiff's TILA claims are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for which relief could be granted.

### D. The Plaintiff's State-Law Claims

As set forth above, the allegations in the complaint do not indicate that the Court may exercise diversity jurisdiction over the plaintiff's state-law claims pursuant to 28 U.S.C. § 1332, because the plaintiff and defendants do not have diverse citizenship. In addition, the Court has determined that plaintiff has not stated a federal claim over which this Court has original jurisdiction under 28 U.S.C. § 1331. Consequently, the Court does not have supplemental jurisdiction over the plaintiff's state-law claims under 28 U.S.C. § 1367. The state-law claims will therefore be dismissed for lack of jurisdiction, without prejudice to the plaintiff's ability to present such claims in state court.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that the complaint fails to state a claim under federal law over which this Court has original jurisdiction. The federal claims must be dismissed with prejudice for failure to state a claim for which relief may be granted, and the state-law claims are subject to dismissal, without prejudice, for lack of jurisdiction. An appropriate order will be filed contemporaneously with this memorandum, dismissing this case in its entirety under 28 U.S.C. § 1915(e)(2)(B).

Kevin H. Sharp
United States District Judge